**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DEMOCRACY DEFENDERS FUND
P.O. Box 15180
600 Pennsylvania Avenue SE
Washington, DC 20003

    *Plaintiff*,

v.

DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW,
Washington, DC 20535

    *Defendant.*

CIVIL ACTION NO. 26-1072

**COMPLAINT**

### PRELIMINARY STATEMENT

1. Plaintiff Democracy Defenders Fund ("Plaintiff" or "DDF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of Justice ("DOJ") to disclose documents requested pursuant to FOIA. Specifically, Plaintiff is seeking documents related to the now-closed investigation of Border Czar, Thomas ("Tom") Homan ("Mr. Homan").

2. Defendant has failed to respond to Plaintiff's FOIA requests within the statutory deadline.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

4. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

5. This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

6. This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

7. Plaintiff, Democracy Defenders Fund, is a national non-profit section 501(c)(3) organization dedicated to restoring American democracy by defending the rule of law, fighting corruption, and protecting elections. DDF is incorporated under the laws of Washington, DC. DDF also regularly publishes reports, updates, and news related to its mission.

8. Defendant DOJ is an agency of the United States under 5 U.S.C. § 552(f)(1). DOJ is headquartered in Washington, DC.

9. Defendant is charged with the duty to provide public access to records in its possession consistent with the requirements of the FOIA. Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

## STATEMENT OF FACTS

10. Mr. Homan is currently the Trump Administration's "Border Czar," a senior White House position for which he receives an annual salary of nearly $200,000.[1] In this role he develops and announces national policy relating to border enforcement, immigration, and national security. On March 17, Homan sent a letter on behalf of the Administration to Senators Susan Collins and Katie Britt summarizing the White House negotiation strategy and in the current

---

[1] Executive Office of the President, Annual Report to Congress on White House Office Personnel 4 (July 1, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/2025-Annual-Report-to-Congress-on-White-House-Staff.pdf.

debate over the funding of the Department of Homeland Security ("DHS").[2] Most recently, he served as the White House's spokesperson for the decision to deploy agents from Immigration and Customs Enforcement to airports as supplementary personnel for the Transportation Security Administration.[3]

11. On September 20, 2025, MS NOW reported that Homan accepted $50,000 from undercover FBI Agents posing as prospective government contractors.[4] These payments were purportedly for the purpose of securing future contracts with the government if President Trump won re-election.

12. According to insider sources quoted in the media, the investigation into Mr. Homan began during the end of the Biden Administration, when a target in a different investigation disclosed that Mr. Homan, who expected an appointment by President Trump, was accepting bribes in exchange for future contracts.[5]

13. According to news reports, the FBI planned to wait to see whether Mr. Homan would deliver on the promised contracts once he was appointed by President Trump.[6]

14. MS NOW reported that it had reviewed documents the agency had created summarizing the tapes and the agency's conclusions about the strength of the evidence.[7]

---

[2] Letter from Tom Homan & James Braid to Susan Collins & Katie Britt (Mar. 17, 2026), available at: https://www.politico.com/f/?id=0000019c-fd78-d71e-a1bd-ff7c45c20000.

[3] *See* Garrett Downs, *ICE agents will be deployed to U.S. airports on Monday: Homan*, CNBC (Mar. 22, 2026), https://www.cnbc.com/2026/03/22/ice-agents-will-be-deployed-to-us-airports-on-monday-homan.html.

[4] Carol Leonnig & Ken Dilanian, *Tom Homan was investigated for accepting $50,000 from undercover FBI agents. Trump's DOJ shut it down*, MS NOW (Sept. 20, 2025), https://www.ms.now/news/tom-homan-cash-contracts-trump-doj-investigation-rcna232568.

[5] Sarah N. Lynch, *Trump Aide Homan Accepted $50,000 in Bribery Sting Operation, Sources Say,* Reuters, Sept. 22, 2025, https://www.reuters.com/world/us/trump-aide-homan-accepted-50000-bribery-sting-operation-sources-say-2025-09-21/.

[6] Leonnig & Dilanian, *supra* note 3.

[7] *Id.*

15. According to sources cited in MS NOW, several law enforcement officials believed that they had a strong case against Mr. Homan based on the recordings.[8]

16. Documents reviewed by MS NOW indicated that officials were considering four criminal charges against Mr. Homan: conspiracy, bribery and two kinds of fraud.[9]

17. Despite the officials' belief in the strength of their case, after President Trump took office, the FBI shockingly decided to drop the investigation as a "'deep state' probe."[10]

18. According to sources who spoke to MS NOW, former acting Deputy Attorney General Emil Bove was briefed on the case just after Trump took office, and Mr. Bove told Department of Justice officials that he did not support the investigation.[11]

19. After Mr. Bove reportedly became aware of the investigation, the President waived the requirement that Homan complete a background investigation.[12]

20. Both the investigation into Mr. Homan's alleged corruption and the agency's decision to drop that investigation implicate important issues of public trust and integrity.

21. On September 22, 2025, two days after MS NOW's reporting on the 2024 bribery sting by the FBI, NOTUS reported that 34 of the 36 attorneys and all but one paralegal who had staffed the

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Carol Leonnig & Ken Dilanian, *Border Czar Tom Homan Didn't Receive Normal Background Check During Bribery Probe*, MS NOW (Dec. 30, 2025), https://www.ms.now/news/border-czar-tom-homan-didnt-receive-normal-background-check-during-bribery-probe. Background investigations of White House officials are generally required under longstanding policies and procedures. President Trump waived the requirement for an investigation prior to issuance of security clearance for a select number of undisclosed individuals serving in the Executive Office of the President on January 20, 2025. *See* Memorandum to Resolve the Backlog of Security Clearances for Executive Office of the President Personnel, 90 Fed. Reg. 8477 (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/memorandum-to-resolve-the-backlog-of-security-clearances-for-executive-office-of-the-president-personnel.

Public Integrity Section of the DOJ Criminal Division in January 2025 were no longer assigned to that office.[13] This followed a determination by DOJ to suspend the requirement that the Public Integrity Section be consulted by federal prosecutors and agents in matters involving federal patronage crimes before taking major investigative steps such as interviewing witnesses, issuing grand jury subpoenas, executing search warrants, or conducting surveillance in June 2025.[14]

22. Also on September 22, 2025, Ranking Member Jamie Raskin of the House Committee on the Judiciary, along with 18 colleagues, sent a letter to Attorney General Pam Bondi and FBI Director Kashyap Patel demanding, *inter alia*, recordings and photographs documenting the meeting between FBI agents or FBI undercover employees and Mr. Homan; communications between any employee at the White House and any employee at either DOJ or FBI regarding the decision to close the investigation; the complete investigative file and subfiles from the U.S. Attorney's Office for the Western District of Texas, the Public Integrity Section, and the FBI regarding Mr. Homan; and communications between political appointees and career staff, including by Attorney General Bondi, Deputy Attorney General Blanche, Director Patel, and former acting Deputy Attorney General Bove regarding the decision to close the Homan investigation.[15]

---

[13] Jose Pagliery, *The Justice Department Had 36 Lawyers Fighting Corruption Full-Time. Under Trump, It's Down to Two.*, NOTUS (Sept. 22, 2025), https://www.notus.org/courts/doj-public-integrity.

[14] *See* DOJ, Justice Manual § 9-85.210 - Violations of Campaign Financing Laws, Federal Patronage Laws, and Corruption of Elections—Consultation Requirement (last visited Mar. 26, 2026), https://www.justice.gov/jm/jm-9-85000-protection-government-integrity#9-85.210 ("Department leadership is currently revising this section.  The Consultation Requirement is suspended while revisions are ongoing. [June 2025]").

[15] Letter from Rep. Jamie Raskin, *et al.*, to Pamela Bondi & Kashyap Patel (Sept. 22, 2025), https://s3.documentcloud.org/documents/26106193/2025-09-22raskin-nadler-lofgren-et-al-to-bondi-doj-patel-fbi-re-homan.pdf.

23. To date, it is not known whether any of this information has been provided by the Department of Justice in response to this letter.

24. On October 7, 2025, Attorney General Pam Bondi made her first appearance before the Senate Committee on the Judiciary and responded to questions regarding the Homan investigation, among other matters. In response to a question from Senator Sheldon Whitehouse about whether Homan declared the $50,000 payment on his tax returns, Attorney General Bondi replied "Senator, I'd be more concerned if I were you … when you pushed for legislation that subsidized your wife's company." Sen. Peter Welch asked Attorney General Bondi "is there a tape that has audio and video of the transfer of the $50,000?" Attorney General Bondi replied "I don't know the answer, senator," and when pressed, continued "Don't call me a liar! . . . You're not going to sit here and slander Tom Homan. . . . Tom Homan is doing a great job as our border czar, keeping your border state safe. You're a border state!"[16] Sen. Adam Schiff asked Attorney General Bondi if she would support a request to release the relevant evidence, as well as what happened to the $50,000. Attorney General Bondi replied that White House Press Secretary Karoline Leavitt had previously asserted that Mr. Homan never took the money, told the Senator "if you worked for me, you would have been fired," and asked him whether he would "apologize to Donald Trump for trying to impeach him?"[17]

---

[16] Peter Welch is a Senator for Vermont, which shares a 90-mile border with Quebec, including the Haskell Free Library and Opera House, a free library and 500-seat theater straddling the border. In March 2025, U.S. Customs and Border Protection ended a 104-year-old policy allowing Canadians to enter the library via its U.S.-facing main entrance on the basis that it was being used by "drug traffickers and smugglers." *See* Cara Tabachnick, *For over a century, a U.S.-Canada cross-border library used a single entrance. Now, the U.S. says Canadians must build their own*, CBS NEWS (Mar. 23,2025), https://www.cbsnews.com/news/haskell-free-library-and-opera-house-canada-u-s-cross-border-separate-entrances/.

[17] No official transcript of the hearing currently exists, these quotes were documented in contemporaneous media coverage of the hearing. *See* Jose Pagliery, *Senators Grill Pam Bondi*

25. On November 25, 2025, Senators Sheldon Whitehouse, Richard Blumenthal, and Adam Schiff filed a FOIA request for information concerning the Homan investigation. Senator Whitehouse explained that the Administration had "repeatedly thumbed their nose to my many legitimate oversight requests" and that his FOIA request was "my last resort to get answers to questions that are important to the American public."[18]

26. Based on DDF's anti-corruption mission, DDF submitted a FOIA request to components of the Department of Justice on February 3, 2026. DDF's request was directed to the Office of the Attorney General ("OAG"), Office of the Deputy Attorney General ("ODAG"), the Executive Office for U.S. Attorneys ("EOUSA"), and the Criminal Division ("CRM").

27. DDF's February 3, 2026, request seeks, specifically:

> All records related to any investigation or investigations or the potential prosecution by the Department of Justice of Thomas "Tom" Douglas Homan's in connection with alleged bribery or violation of any federal law created, collected, stored, and/or reviewed by any current or former employee of the Department of Justice, from January 1, 2024 through the date the search is conducted. This includes but is not limited to the following categories:
>
> a) All criminal or civil case files, reports, or summaries, including any Electronic Communications (EC) that outline the findings, progress, and outcomes of any investigation or investigations by the Department of Justice.
> b) All records of interview reports, such as any FD-302, any statements, interviews, and/or interrogations of any investigation or investigations by the Department of Justice.

---

*Over FBI's Alleged $50,000 Tom Homan Bribe*, NOTUS (Oct. 7, 2025), https://www.notus.org/senate/pam-bondi-senate-fbi-tom-homan-alleged-bribe.

[18] Steve Benen, *Democratic senators file FOIA request, demand answers about Tom Homan controversy*, MS NOW (Nov. 25, 2026), https://www.ms.now/rachel-maddow-show/maddowblog/democratic-senators-file-foia-request-demand-answers-about-tom-homan-controversy; *see also* Office of Sheldon Whitehouse, *Whitehouse, Blumenthal, Schiff File FOIA Requests to Break Through Trump Administration Stonewalling*, Press Release (Nov. 26, 2025), https://www.whitehouse.senate.gov/news/release/whitehouse-blumenthal-schiff-file-foia-requests-to-break-through-trump-administration-stonewalling/ (embedding the FOIA requests filed by the Senators).

c) All records held within any case file, including internal correspondence, attorney assignments, assessments of the strength of prosecution, recommendations for prosecution, and prosecution declination reports (or any similar such documents).

d) Any written communications between Assistant United States Attorneys (AUSAs) and other staff in the Criminal Division of the United States Attorney's Office for the Western District of Texas and the Federal Bureau of Investigation regarding Homan, Julian "Jace" Calderas, Mark Hall, Charles Sowell, any potential "border wall," Border911, SE&M Solutions, or Industrial Tent Systems.

e) Any application for the use of an undercover agent, and EC or other communications or summary of communications concerning the approval of an undercover agent.

f) Any application for the use of funds for bribe payments (i.e. bribe authority), and any EC or other communications or summary of communications concerning the use of funds for bribe payments.

g) Any records to or from supervisory AUSAs in the Criminal Division of the U.S. Attorney's Office for the Western District of Texas, supervisory attorneys in the Public Integrity Section (PIN) of the DOJ Criminal Division, Jennifer A.H. Hodge, Pamela Bondi, Todd Blanche, or Emil Bove referencing Julian "Jace" Calderas.

Any communications, including any email, Teams chat, or instant message sent or received by Pamela Bondi, Todd Blanche, Emil Bove or any Department of Justice employee serving on the Department of Justice's agency presidential transition team, or their immediate staff on their behalf, with any member, including any volunteer, of the president's transition team between Nov. 1, 2024 and January 30, 2025, concerning Thomas "Tom" Douglas Homan.

Any communications, including any email, Teams chat, or instant message sent or received by Pamela Bondi, Todd Blanche, Emil Bove, or their immediate staff on their behalf, to or from any officer or employee of the White House Office, including Karoline Leavitt and her staff, concerning Thomas "Tom" Douglas Homan

28. Various components of DOJ acknowledged DDF's Request and assigned it differing tracking numbers according to each component's internal tracking systems.

a. The Executive Office for U.S. Attorneys (EOUSA) acknowledged receipt of DDF's Request on February 4, 2026, assigning it tracking number EOUSA-2026-001919. Assistant Director Kevin Krebs stated that he "ha[d] determined that your request

for expedited processing under these standards should be denied. However, we are proceeding to process [DDF's] request in the normal order."

b.  The Office of Information Policy (OIP), which typically processes FOIA requests for OAG and ODAG, acknowledged receipt of DDF's Request on February 5, 2026, assigning it tracking number FOIA-2026-01556. It denied DDF's request for expedited processing. It explained that "[t]o the extent that your request requires a search in another Office, consultations with other Department components or another agency, and/or involves a voluminous amount of material, your request falls within 'unusual circumstances,'" and extended its deadline to respond by 10 days. It assigned DDF's Request to the complex processing track and stated twice that "[a]ny decision with regard to the application of fees will be made only after we determine whether fees will be implicated for this request." It also stated that absent a special request, OIP would not initially be conducting a search for records other than official correspondence, emails, and their attachments.

c.  The Criminal Division (CRM) acknowledged receipt of DDF's Request on February 12, 2026, assigning it tracking number CRM-302409670. It did not make a determination on DDF's fee status or request for a fee waiver. It stated that the DOJ Director of Public Affairs "determined that [DDF's] request for expedited processing should be denied."

d.  The Justice Management Division (JMD) acknowledged receipt of DDF's Request on February 12, 2026, assigning it tracking number 138764. It explained that the request had been "sent to JMD by the Criminal Division as a misdirected request" under CRM's tracking number CRM-302409670. It also referenced another

internal tracking number, "Intranet Quorum IMA00177692" in the subject line of JMD's email. The following day, February 13, 2026, JMD emailed again to inform DDF that "the Director of Public Affairs . . . . made a blanket decision and has determined that your request for expedited processing should be denied."

29. On March 19, 2026, DDF Senior Ethics Counsel contacted the DOJ offices which had acknowledged receipt of DDF's request to request an estimated date of completion for DDF's request. Agencies subject to FOIA are required to provide "an estimated date on which the agency will complete action on the request" upon demand. 5 U.S.C. § 552(a)(7)(B)(ii).

   a. CRM responded the same day, noting that DDF's request "has been pending for 32 working days," explained that the search was pending, and estimated that it would be completed "within 12 months." CRM also warned that "this is a preliminary estimate that will likely be modified as our searching is completed, and the volume and complexity of the material is evaluated." It did not address whether any or all of DDF's request had been referred to JMD as a "misdirected request."

   b. On March 20, 2026, JMD responded that an eDiscovery search for the DOJ transition team members communications had been sent, but that they could not provide an estimated date of completion. JMD explained that FOIA 138764 is pending behind 109 other requests.

   c. On March 23, 2026, OIP responded that the search for records responsive to DDF's request was still pending, and estimated that the production of records responsive to OIP's portion of DDF's Request would be completed by November 15, 2027, 650 days from the receipt of DDF's FOIA at OIP. OIP further warned that "this is an estimate based on limited information and accordingly is subject to change."

DDF replied that same day, noted OIP's limited search parameters to emails, attachments, and official correspondence, and clarified that DDF was "seeking *all* responsive records regardless of format." (emphasis in original).

d.  To date, EOUSA has yet to respond to DDF's request for an estimated date of completion.

30. To date, Plaintiff has yet to receive any information regarding the state of the search for responsive records. The only information Plaintiff has learned is that OIP believes 650 days is an overly optimistic estimation for how long it should take to disclose information from the Offices of the Attorney General and Deputy Attorney General regarding what role, if any, they played in clearing the way for Thomas Homan to become a senior adviser to the President less than a year after accepting $50,000 in cash in a paper bag from undercover FBI agents.

31. Reporting suggests that FBI agents who were familiar with the case felt that there was credible evidence of a corruption campaign and wanted to continue to investigate the matter. Political appointees, including the Director of the FBI and DOJ officials, reportedly terminated the investigation.[19] In a statement provided to MS NOW (MSNBC at the time) for example, FBI Director Kash Patel and Deputy Attorney General Todd Blanche stated that the FBI agents "found no credible evidence of any criminal wrongdoing."[20]

32. Given these conflicting narratives, release of records responsive to Plaintiff's FOIA request is necessary to aid the public in its understanding of the Department's handling of the investigation and whether there was credible evidence of a potential violation or not.

---

[19] Leonnig & Dilanian, *supra* note 3.
[20] *Id.*

33. In its denial of Plaintiff's request for expedited processing, OIP explained "[t]his Office cannot identify a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activities generally."

34. Each component of DOJ which acknowledged Plaintiff's FOIA request and denied expedited processing also relayed a determination by the DOJ Director of Public Affairs that the subject matter of the request was not a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

## COUNT ONE:

### *Violation of Statutory Deadline*

35. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

36. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information.  FOIA reflects a "profound national commitment to ensuring an open Government," and agencies must "adopt a presumption in favor of disclosure."  Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

37. FOIA requires agencies to make an appeal determination within 20 working days after the receipt of the appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

38. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

39. Twenty working days from February 3, 2026 (the date DDF submitted its FOIA request) was Wednesday, March 4, 2026.[21]

40. With the ten-day extension claimed by OIP to respond to its portion of Plaintiff's request, 30 working days from February 3, 2026, was March 18, 2026.

41. As of the date of this filing, Plaintiff has received no documents in response to its FOIA request.

42. No publicly available information suggests that Defendants have provided any information about the Homan investigation in response to any FOIA or congressional oversight request to date.

43. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its February 3, 2026, FOIA request, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

---

[21] Excluding 4 weekends and President's Day on Feb. 16, 2026.

## COUNT TWO

### *Unlawful Withholding of Agency Records*

44. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

45. Defendant has, to date, failed to produce records responsive to Plaintiff's FOIA Request or to provide an explanation of why responsive records cannot be produced because of exemptions outlined in 5 U.S.C. § 552(b).

46. Defendant's failure to make a determination on or disclose the documents requested within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

47. Defendant's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding the Department of Justice and broader Trump Administration's efforts to curtail a corruption investigation into Tom Homan, who remains a senior White House adviser currently leading the most prominent components of the President's domestic agenda.

48. Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. §552(a)(6)(C)(i).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

   i.   Enter an order declaring that Defendant violated the statutory deadline to respond to Plaintiff's FOIA request;

  ii.   Enter an order declaring that Defendant wrongfully withheld requested agency documents;

 iii.   Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iv.   Maintain jurisdiction over this action until Defendant is in compliance with FOIA and every

order of this Court;

 v.   Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

vi.   Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on March 30, 2026.

s/ *Kevin H. Bell*_____
Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Free Information Group, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642

*/s/ Taryn Wilgus Null*
Taryn Wilgus Null (DC Bar # 985724)
Norman L. Eisen (DC Bar #435051)
Zsa'Queria Martin (pro hac vice application forthcoming)
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958
Norman@democracydefenders.org
Taryn@democracydefenders.org
Zsaqueria@democracydefenders.org
*Attorneys for Plaintiff*